**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Weltha J. Jones-Rankins, | ) | CV 10-01626-PHX-FJM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Cardinal Health Incorporated, | ) ) | |
| Defendant. | ) ) ) | |

The court has before it defendant's motion for summary judgment (doc. 52), plaintiff's response (doc. 58) and motion for extension of time to file response (doc. 57), and defendant's reply (doc. 76). Plaintiff's response and motion for an extension of time were filed four days after the deadline, however defendant neither opposes nor appears to be prejudiced by the late response. We grant plaintiff's motion for extension of time to file the response nunc pro tunc.

We also have before us plaintiff's motion to (1) amend her response to the motion for summary judgment, (2) admit a CD-ROM of evidence, (3) amend her statement of disputed facts, (4) file a separate statement of facts, (5) amend her exhibit list, and (6) file a surreply to defendant's reply (doc. 78), and defendant's response (doc. 79). Plaintiff filed a reply in support of her motion three days late (doc. 80).

**I. Background**

On a motion for summary judgment we accept undisputed facts as true and review

disputed facts in the light most favorable to the non-moving party. <u>Anthoine v. N. Cent. Cntys. Consortium</u>, 605 F.3d 740, 745 (9th Cir. 2010). Defendant is a publically traded company that operates distribution facilities throughout the United States. Each facility distributes either medical or pharmaceutical products to defendant's customers. There are not onsite human resources ("HR") staff at each facility. Instead, one HR Director and one HR Consultant are assigned to each geographic region, and divide responsibility for sites within that region between them. HR Consultants report to HR Directors. Aside from the HR Director's supervisory role, the job duties are the same. These positions require travel from a "home base" facility to each assigned facility.

Plaintiff, an African-American female, was hired by defendant in September 2006 as Senior HR Consultant for the West region. As of February, 2007 plaintiff's home base was Tolleson, Arizona. Tolleson is a pharmaceutical facility. In 2007 plaintiff began reporting to HR Director Valerie Pitteroff. Plaintiff's assigned territory consisted of medical and pharmaceutical facilities in Arizona and Colorado.

Plaintiff's work in Colorado required her to interact with Kathy Popejoy, a non-HR employee. Popejoy and plaintiff did not get along. Popejoy was openly critical of some of plaintiff's recommendations. One of plaintiff's colleagues once asked her if she thought Popejoy's dislike of plaintiff was linked to race. Plaintiff shared this comment in mid-2007 with Popejoy's boss, Brian Merrill. He responded by denying that Popejoy was racist.

In March 2008, the Senior VP of Operations for the West, Robert Randklev, made a site visit to Denver. After this visit, he emailed Pitteroff ("the Randklev email") stating that he had been told that visits by the HR Consultant in Phoenix were "few and far between." <u>DSOF</u> ¶ 25. Plaintiff learned of the Randklev email and, believing its criticism to be unfounded, filed an internal complaint through defendant's "My Safe Workplace" program (an "MSW") on March 30, 2008. Her MSW theorized that Popejoy, wanting to "get back at her," must have put Randklev up to writing the email. <u>Id.</u> ¶¶ 26-27. She did not allege race discrimination. Defendant investigated the MSW and found the allegations unsubstantiated. Plaintiff filed a supplement a few days after the investigation concluded. She claimed that

- 2 -

Merrill told her that he did not think that an MSW was the appropriate way for her to express discontent with the email. Plaintiff received a positive performance review in September 2008 from Pitteroff that made no mention of the Randklev email or the MSW.

On November 21, 2008, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation. The conduct complained of included the Randklev email and plaintiff's interactions with Popejoy and Merrill. Plaintiff received a right to sue letter dated August 17, 2009, but did not file a lawsuit.

Four days later, on November 25, 2008, defendant's CEO announced a company-wide reorganization. Defendant would transition to operating its medical and pharmaceutical business units separately. This represented a return to pre-2006 operations, and would require a realignment of HR territories. Brian Worth, the VP of HR, was responsible for staffing HR Directors and Consultants within the new structure. On December 16, 2008, Worth announced that the former West region would be realigned into the "Medical West" and "Pharmaceutical West" regions. The next day, he told the HR Directors that they would need to re-deploy the HR Directors and Consultants as necessary to fit the new business structure.

Worth finalized a new HR structure in January 2009. This structure placed one HR Director and one HR Consultant in Medical West to support the medical facilities, and one HR Director and HR Consultant in Pharmaceutical West to support the pharmaceutical facilities. All four HR representatives from plaintiff's region would retain their positions, but would receive updated territory assignments to match the new division between medical and pharmaceutical facilities.

To determine the new assignments, Worth first placed each HR Director into a geographic region and home base. At the time, Pitteroff was based at the medical facility in Ontario, California. Worth decided that it made business sense to keep Ontario as Pitteroff's home base, because it was the largest medical facility in the West. Pitteroff became the HR Director for the new Medical West territory. This left the other HR Director in the West,

Katherine Cowley, to cover Pharmaceutical West. Prior to the reorganization Cowley split her time between the pharmaceutical facility in Elk Grove, California and the medical facility in Dixon, California.[1] Because Elk Grove was one of the largest pharmaceutical facilities in the West, Worth decided to base Cowley there.

Next, Worth decided that the HR Consultants would continue reporting to their current HR Directors. Plaintiff would continue to report to Pitteroff and became the HR Consultant for the Medical West territory. Plaintiff's home base at the time, Tolleson, was a pharmaceutical facility. After the restructuring, this facility was no longer in plaintiff's territory. Dixon, California housed the second-largest medical facility in the West. Dixon had a history of employee discontent and employee relations issues. It made significant improvements after Cowley, the then-HR Director for the site, was instructed to focus special attention there.

Because Dixon would no longer be part of Cowley's territory, Worth was concerned that loss of an onsite HR presence would place the Dixon facility at a substantial risk of returning to its previous (and unacceptable) conditions. He decided that the HR Consultant for Medical West would be based out of Dixon. Thus, plaintiff was assigned to Dixon, California as her home base. Popejoy played no role in this decision.

Plaintiff spoke with Pitteroff and Worth on January 15, 2009. She was told that she would continue reporting to Pitteroff and would become the HR Consultant for the Medical West region. She was also informed that she would be based in Dixon. Her position and job duties would remain the same, and she would not have to apply for or compete for the position. As a part of the transfer, plaintiff was offered defendant's standard relocation package. This included full reimbursement for relocation expenses and temporary housing expenses and financial assistance to rent or purchase housing in Dixon. Plaintiff's base salary and employee benefits remained the same, and she would receive a $15,000 cost of living

---

[1] Plaintiff does not agree that Cowley split her time between these locations, but offers no evidence to support her assertion.

- 4 -

increase, a $10,000 geographic pay supplement, and a 3.5% raise. If plaintiff decided not to transfer, she would receive a severance package.

On January 27, 2009, plaintiff filed a second charge with the EEOC. She alleged that she was retaliated against for filing the November 2008 EEOC charge by being told that she had to transfer to Dixon or be discharged. DSOF, ex. B at 91.

After a visit to Dixon that was paid for by defendant, plaintiff accepted the transfer offer and began working from Dixon. Plaintiff was fully reimbursed for her relocation expenses. She felt that Dixon was a better work environment than Tolleson. Plaintiff's employment was terminated on August 3, 2009.[2] Defendant has required that her replacement be based out of the Dixon facility since his hire.

The EEOC issued a right to sue notice for plaintiff's January 2009 EEOC retaliation charge on April 30, 2010. Plaintiff filed this action on August 2, 2010, alleging that defendant retaliated against her in violation of Title VII and § 1981 by eliminating her position in Tolleson and transferring her to Dixon, California. Defendant moves for summary judgment, arguing that plaintiff has not established a prima facie case and cannot show that its proffered reasons for her transfer are pretext.

**II. Plaintiff's Motion to Amend Her Opposition and File a Sur-Reply**

After summary judgment briefing closed, plaintiff filed a motion seeking to amend various aspects of her summary judgment response and seeking leave to file a sur-reply (doc. 78). Defendant opposes the motion, arguing that plaintiff's request for a "do-over" is unsupported by law.

Plaintiff arrived at the Clerk's office to file her response four days after the deadline to respond expired and seven minutes before the office closed. She states that "in the rush" to file her response, she "overlooked" giving her prepared separate statement of facts to the Clerk. Pl.'s Mot. to Amend at 2. She also notes that "in hindsight," she failed to cite to her

---

[2]Plaintiff's termination, and the May 2010 EEOC charge she filed that challenges her termination, are not part of this action.

- 5 -

statement of facts in her response brief, and failed to file a "completed" statement of disputed facts. Id. This District's rules of practice require a party opposing a motion for summary judgment to file a statement that includes "any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. . . and must refer to a specific admissible portion of the record where the fact finds support." LRCiv 56.1(b). The rules also require a party to include citations to the statement of facts in the memorandum of law when relying on a fact. Id. 56.1(e). Recognizing her noncompliance, plaintiff moves to amend her opposition to the summary judgment motion, requests leave to file a separate statement of facts, requests leave to amend her statement of disputed facts, and requests leave to amend her exhibit list, citing Rule 15, Fed. R. Civ. P. But Rule 15 is inapplicable, because the documents plaintiff seeks to amend are not pleadings. See Fed. R. Civ. P. 7(a) (listing which documents are pleadings).

Next, plaintiff seeks leave to admit a CD ROM that she claims contains "over 30% of the supporting evidence for her case." Pl.'s Mot. at 3. Plaintiff presented the CD ROM to the Clerk's office. The office refused to accept the CD ROM. Plaintiff complains that this was error. Plaintiff is incorrect. See LRCiv 5.5(a) ("The Clerk of Court is authorized to develop, publish and implement an Electronic Case Filing Administrative Policies and Procedures Manual for the District of Arizona (Administrative Manual)."). As a *pro se* litigant, plaintiff must submit documents for filing to the Clerk's office "in legible, paper form." Administrative Manual at 6.[3] The Clerk's office then scans and electronically files the documents. Id. Parties who wish to submit exhibits that cannot be converted to electronic format (for example, physical exhibits) must seek leave from the court. If granted, the party must then "prepare an index in pleading format to be submitted with the exhibits," which must be served on the opposing party along with the exhibit. Id. at 20-21. Plaintiff did not follow this procedure. In any event, the CD ROM plaintiff wishes to admit is

---

[3]Plaintiff complains that she had no way of learning about these policies. But a copy of the manual is available to the public on the District of Arizona's website at http://www.azd.uscourts.gov/azd/cm-ecf.nsf/files/$file/adm+manual.pdf.

- 6 -

convertible to electronic form. Plaintiff could have printed out the pages she wished to include with her filing and handed them to the Clerk in paper format. The Clerk's office would have scanned and electronically filed these pages. Plaintiff offers no reason for her failure to follow this procedure.

Finally, plaintiff asks for leave to file a surreply. She claims that defendant's reply contains assertions that "have no basis in fact, truth, or credibility." Pl.'s Mot. at 4. A surreply is not authorized by the local rules. See LRCiv 7.2. It is also unnecessary. Plaintiff's response is twenty-one pages long, which is already longer than the local rules permit. See LRCiv 7.2(e)(1) (limiting a response and its supporting memorandum to seventeen pages). Defendant's reply contains citations to its statement of facts, which in turn cites to portions of the record. We can review defendant's assertions to evaluate whether they are supported by admissible evidence.

We urged plaintiff early on in this action to obtain a lawyer (doc. 7). Plaintiff decided to press ahead alone, and must live with the consequences of her procedural mistakes.[4] See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (*pro se* litigants must comply with the rules of procedure). We deny plaintiff's motion in its entirety (doc. 78).

### III. Section 1983 Claim

Plaintiff's complaint (doc. 1) includes a citation to 42 U.S.C. § 1983. Compl. at 6. It is unclear whether plaintiff intended to assert a separate claim under § 1983. Defendant argues that any § 1983 claim fails as a matter of law because defendant is a private actor. To state a claim under § 1983, a plaintiff must show that the defendant was acting under color of law. Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 899 (9th Cir. 2008). A private party can only be liable under § 1983 if there is "joint action" with a state actor. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 927 n.6, 102 S. Ct. 2744, 2748 (1982). Plaintiff did not address defendant's argument in her response, and there is no evidence suggesting that

---

[4]We reminded plaintiff of her obligation to fully comply with the rules of procedure in April, 2011 (doc. 23).

- 7 -

defendant was acting under color of law when it allegedly retaliated against plaintiff. To the extent that plaintiff alleged a § 1983 claim, we grant summary judgment to defendant.

### IV. Prima-Facie Case for Retaliation

Under Title VII, it is unlawful for an employer to "discriminate against any of his employees. . . because he has opposed any practice made an unlawful employment practice. . ., or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Section 1981 similarly prohibits employer retaliation motivated by racial discrimination. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 455-57, 128 S. Ct. 1951, 1960-61 (2008).

We evaluate plaintiff's Title VII and § 1981 retaliation claims under the same burden-shifting framework. See Manatt v. Bank of Am., NA, 339 F.3d 792, 801 (9th Cir. 2003). To make out her prima facie case of retaliation, plaintiff must prove that "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008). If she does, the burden shifts to defendant, who must "set forth a legitimate, non-retaliatory reason for its actions." Id. Plaintiff then "must produce evidence to show that the stated reasons were a pretext for retaliation." Id. A plaintiff can prove pretext either by showing that retaliation "more likely motivated the employer," or by showing that its offered explanation is "unworthy of credence." See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981).

Defendant argues for the first time in its reply brief that plaintiff failed to prove that she engaged in a protected activity. We do not consider issues raised for the first time in a reply. Gadda v. State Bar of Cal., 511 F.3d 933, 937 n.2 (9th Cir. 2007). It is also undisputed that plaintiff filed an EEOC charge in November 2008, which she claims was the reason why she was transferred to Dixon. See DSOF, ex. B at 91. Filing a charge is explicitly listed in Title VII's description of protected activity. See 42 U.S.C. § 2000e-3(a) (stating it is unlawful for an employer to retaliate after an employee has "made a charge").

Next, defendant contends that plaintiff cannot prove that she suffered an adverse

- 8 -

employment action. According to defendant, the undisputed retention of plaintiff's job title, duties, base salary, and benefits coupled with the increase in supplemental compensation she received and her satisfaction with her new work environment cannot amount to an adverse action. But actionable retaliation is not limited to "workplace-related or employment-related" harm. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67, 126 S. Ct. 2405, 2414 (2006). It consists of "materially adverse" actions that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'." Id. at 68, 126 S. Ct. at 2415 (citation omitted). When evaluating whether a challenged action is materially adverse we apply an objective standard. We must consider context, as the impact of an employment change may make "little difference" to some but may "matter enormously" to someone in plaintiff's position. Id. at 69, 126 S. Ct. at 2415.

Here, the evidence is sufficient for a jury to conclude that plaintiff's transfer to Dixon was an adverse action. It is undisputed that as part of the corporate reorganization, plaintiff was offered two choices. Either she could keep her position and transfer to Dixon, or she could sever her employment with defendant. Not all HR staff in the West region faced this decision. Under the new structure, it was decided that both HR Directors would remain at their home base locations. DSOF, ex. A at 4. For plaintiff, remaining at her home base in Arizona was not an option. She testified at her deposition that she has family living in Phoenix. Id., ex. B at 83. When looking at the decision plaintiff faced in context, we find that a job transfer eliminating an employee's position and forcing an employee to move out of state and away from family could dissuade a reasonable employee from making a further charge of discrimination, especially when the alternative is to be unemployed.

Defendant argues that plaintiff cannot prove a causal connection between her transfer to Dixon and her engagement in protected activity. Causation can be inferred from proximity between the protected activity and the allegedly retaliatory action. Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000). Defendant initially argued that the "only protected activity [p]laintiff identified in her deposition as allegedly motivating the transfer decision was her March 2008 MSW complaint and her April 27, 2008 supplement to that complaint," MSJ

at 13, thus representing a nine-month gap in time between the activity and the allegedly retaliatory transfer. Plaintiff responds that her November 21, 2008 EEOC charge is the relevant protected activity, which occurred less than two months before she was notified of her job elimination and transfer to Dixon. Defendant does not dispute that it was aware of the EEOC charge, but replies that because plaintiff made multiple complaints of discrimination in this case, the relevant time period is the time between her first complaint - the 2008 MSW - and her job transfer. Defendant's argument contradicts its earlier (and undisputed) contention that plaintiff "did not allege race discrimination in her March 30, 2008 complaint." DSOF ¶ 28. Either plaintiff's MSW alleged discrimination and was a protected activity or it was not: defendant cannot have it both ways. See Anthoine, 605 F.3d at 745 (on a motion for summary judgment we consider undisputed facts as true).

It is undisputed that plaintiff alleged race discrimination in her November 21, 2008 EEOC charge. And it is also undisputed that Worth announced the need to re-deploy the HR Directors and Consultants as needed to new geographic regions on December 17, 2008. Plaintiff does not argue that her November EEOC charge prompted a nationwide corporate restructuring. However, decisions regarding how the restructuring of HR would take place, including where each HR staff member would be located, were made after defendant was aware of plaintiff's EEOC charge. Based on the undisputed facts, the less than two months that elapsed between plaintiff's November 2008 EEOC charge and her job transfer is sufficiently close in time to establish sufficient evidence of causality for the purposes of establishing a prima facie case. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 1511 (2001) (collecting cases holding that gaps of three and four months were too long to establish causality); Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that proximity in time was "apparent on the record" when allegedly retaliatory actions began "less than three months" after the protected activity). In sum, we conclude that sufficient evidence exists to establish a prima facie case for retaliation.

**V. Defendant's Reasons for the Transfer and Plaintiff's Allegations of Pretext**

Defendant argues that plaintiff's transfer to Dixon, California arose from business

needs connected to its corporate restructuring and historic problems at the Dixon site. Because defendant articulated non-retaliatory reasons for plaintiff's transfer, to survive summary judgment plaintiff must raise a genuine issue of material fact as to pretext. Plaintiff does not dispute the decision-making process that Worth used to place her boss, Pitteroff, in Ontario, California as HR Director for Medical West. She does not dispute that Cowley was placed in Elk Grove, California as HR Director for Pharmaceutical West. Plaintiff concedes that it was Worth's decision to have her continue reporting to Pitteroff as HR Consultant for Medical West. She does not dispute that her previous home base, Tolleson, Arizona, was a pharmaceutical facility and would no longer be in her territory. She also agrees that Dixon was the second-largest medical facility in the West region. Plaintiff concedes that in the past the Dixon site had employee problems, which improved after defendant directed Cowley to focus more attention on that facility. And Worth was concerned that Dixon would return to prior conditions without onsite HR support.[5] Nevertheless, plaintiff contends that the reasons defendant gives for her transfer to Dixon are false and therefore pretextual.

Plaintiff argues that Worth "began colluding" with Pitteroff and Cowley to "fabricate" an HR restructuring plan. Response at 17. Plaintiff believes that it was "Mr. Worth's idea all along" to adopt a plan that resulted in her transfer to Dixon, rather than keep the HR staffing as-is, which reveals Worth as a person who "designed and intended to produce the adverse action against [p]laintiff." Id. at 18-19. The fact that it was Worth who had the idea for the restructuring plan is hardly surprising. Plaintiff does not dispute that Worth, as VP of HR, was responsible for placing the HR Directors and Consultants at home base facilities. That he actually did so, after considering possible options and receiving input from other HR management, does not show that defendant's proffered reasons for plaintiff's transfer are false.

---

[5] Plaintiff attempts to show that this fact is "seriously deceptive and untrue" by arguing that the concern about Dixon returning to former conditions was initially raised at a meeting that Worth did not attend. PSODF ¶ 67. Even if this is true, it does not show that Worth did not have his own valid concerns about Dixon.

Plaintiff argues that defendant's concerns about prior union activity in Dixon "were wholly unrelated to the company-wide restructure." Id. at 19. She notes that Dixon's problems were absent at the time of her transfer. This, plaintiff reasons, reveals that defendant's proffered reason for her transfer - concerns about Dixon - was false and therefore pretextual. But as plaintiff admits, Dixon had a history of problems and Cowley would no longer be visiting Dixon in her new role as HR Director Pharmaceutical West. Worth was concerned about problems at Dixon resurfacing without onsite HR support. The fact that these problems had not actually resurfaced at the time the decision was made to transfer plaintiff does not suggest that defendant's desire to prevent future problems is without credence.

Next, plaintiff argues that the other HR Consultant for the West, Fortner, was permitted to provide feedback on each deployment plan and plaintiff was not. Plaintiff complains that Fortner was never considered for relocation to Dixon. Plaintiff also notes that the three other HR staff in the West region were permitted to remain in their home states while plaintiff was not.[6] Even assuming all these statements are supported by admissible evidence, they do not rebut the credibility of defendant's explanation for plaintiff's transfer. Fortner previously worked for Cowley and would continue to do so after the reorganization. Cowley became HR Director for Pharmaceutical West. Dixon is a medical facility. Because Fortner became HR Consultant for Pharmaceutical West, it is to be expected that Fortner would not be considered for relocation to Dixon, a medical facility. And even if Fortner was consulted about potential relocation plans and plaintiff was not, this does not reveal that defendant's explanations for how Worth decided that plaintiff's position had to be based in Dixon are false.

Finally, plaintiff argues that other options existed that would have allowed plaintiff to remain in Arizona while still comporting with defendant's new business structure. Plaintiff

---

[6] Plaintiff indicates that the evidence allegedly supporting these contentions is on her CD ROM.

concludes that because other options were available, her transfer was unnecessary, and was therefore discriminatory and based on a "false business rationale." Response at 20. Plaintiff cannot rebut defendant's proffered explanations simply by second guessing defendant's business decisions. See Sharpe v. Am. Tel. & Tel. Co., 66 F.3d 1045, 1050 (9th Cir. 1995) (discrimination laws not intended to provide for a general review of business decisions). The failure of defendant to implement plaintiff's preferred plan for reassignment does not mean that defendant was motivated by a retaliatory purpose or that defendant's explanation of the transfer is false.

The undisputed facts establish that defendant underwent a business restructuring that required realignment of HR in plaintiff's region. Plaintiff's boss, Pitteroff, became HR Director of Medical West, and plaintiff's home base in Tolleson was a pharmaceutical facility. Plaintiff had to be transferred somewhere. Defendant offered evidence showing that Worth's assignment of plaintiff to Dixon was based on a business decision to place onsite HR support at a facility that had problems in the past, and that defendant feared could backslide without onsite HR monitoring. And even after plaintiff's employment was terminated, defendant required the replacement HR Consultant to be based in Dixon.

In plaintiff's view, the undisputed facts reveal a web of lies designed to cover up retaliation. But to survive summary judgment, plaintiff needs to present more than her own theories of collusion and falsity. She must raise a genuine issue of material fact that defendant's explanations are not the real reasons for her transfer. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093-94 (9th Cir. 2001). Plaintiff has failed to do so.

Despite plaintiff's failure to comply with summary judgment procedures, we reviewed the documents plaintiff did file with her response to see if a genuine issue of material fact existed. Having found none, we grant defendant's motion for summary judgment.

## VI. Conclusion

**IT IS ORDERED GRANTING** plaintiff's motion for extension of time to file response (doc. 57) nunc pro tunc.

**IT IS ORDERED DENYING** plaintiff's motion to amend her opposition to the

motion for summary judgment, admit a CD-ROM of evidence, amend her statement of controverting facts, file a separate statement of facts, amend her exhibit list, and file a sur-reply to defendant's reply (doc. 78).

**IT IS ORDERED GRANTING** defendant's motion for summary judgment (doc. 52). The Clerk shall enter judgment.

DATED this 15th day of December, 2011.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge